781 So.2d 519 (2001)
Lilia CORDONES, Trustee, Richard B. Jones, et al., Appellant,
v.
BREVARD COUNTY, Florida, etc., Appellee.
No. 5D00-1835.
District Court of Appeal of Florida, Fifth District.
April 6, 2001.
*521 Kurt H. Garber of Wilson, Leavitt & Small, P.A., Orlando, for Appellants.
Christine Lepore, Assistant County Attorney, Office of the Brevard County Attorney, Viera, for Appellee.
SHARP, W., J.
Cordones (Trustee for Edward Woodberry, who owns a vacant parcel of beachfront property), Richard and Irene Jones (owners of beachfront property containing an apartment complex), Melinda Millsap (owner of a beachfront property improved with a single family residence) and James and Carole Pope (owners of beachfront properties improved with duplexes) appeal from a non-final order of partial taking of easements over their respective parcels in favor of Brevard County. They argue on appeal that the condemning authority, Brevard County, failed to establish necessity for the easements, that the court erred in granting the County a temporary easement which has no duration, and that the County's estimate of value was not based on a valid appraisal. We affirm, except in part, concerning the second point on appeal.
This condemnation proceeding commenced on December 18, 1999, to obtain easements required for the Brevard County Shore Protection Project, a beach renourishment undertaking, for which the County is the local sponsor. In order to be a local sponsor and obtain federal funds which will pay 60% of the cost of the project, the County must acquire at least a fifty-year easement over all of the area needed to construct the project and allow additional replenishment over time. The easement would be utilized over a twenty-four hour period, approximately once every six years. There was testimony that the area of the beach where appellants' parcels are located, has suffered erosion caused by storms, and a rise in sea level. It also suffered other problems created by the Canaveral Harbor Federal Navigation Project, which was constructed in the 1950s. Without the project, erosion of the beach would continue through the dune line to the extent it would threaten private property, public property, sea turtle nesting habitats and public recreation at the beaches. However, shore protection projects are unpredictable and no one really knows exactly how this project will be constructed or how often renourishment will be needed.
Appellants argue that taking property by eminent domain for the purpose of attracting federal funds is insufficient to establish that the property interest sought is necessary for the project. See Knappen v. Division of Administration, State, Department of Transportation, 352 So.2d 885 (Fla. 2d DCA 1977). We think that case is distinguishable from Knappen because here the County sought to condemn only sufficient property as was necessary for the project, pursuant to the directions of the United States Corps of Engineers, that would assure federal funding. The amount and nature of the property interest sought to be taken in this case did not *522 exceed what was required to accomplish the job.
No bright line test is available to determine what constitutes "reasonable necessity" for a taking by a condemning authority. To establish necessity, the condemnor need not have the funds on hand, need not have plans and specifications completely prepared for the project, and need not have completed all preparations for immediate construction. Test v. Broward County, 616 So.2d 111 (Fla. 4th DCA 1993); City of Miami Beach v. Broida, 362 So.2d 19 (Fla. 3d DCA 1978); City of St. Petersburg v. Vinoy Park Hotel Co., 352 So.2d 149 (Fla. 2d DCA 1977); Central & Southern Florida Flood Control Dist. v. Wye River Farms, Inc., 297 So.2d 323 (Fla. 4th DCA 1974); Dade County v. Paxson, 270 So.2d 455 (Fla. 3d DCA 1972). Planning for the future is one of the elements that a county must consider in determining which property is to be acquired. A condemnor must consider several factors in establishing necessity, to wit: (1) the availability of an alternate route; (2) cost; (3) environmental factors; (4) long range planning; and (5) safety considerations. Florida Power Corp. v. Gulf Ridge Council, 385 So.2d 1155 (Fla. 2d DCA 1980). A governmental entity has wide discretion to select the amount, location and interest of the property to be condemned. School Board of Broward County v. Viele, 459 So.2d 354 (Fla. 4th DCA 1984).
A trial court's order approving condemnation of private property for public use should not be disturbed on appeal when the taking is supported by good faith considerations of cost, safety, environmental protection and long-term planning. City of Cocoa v. Holland Properties, Inc., 625 So.2d 17, 19 (Fla. 5th DCA 1993). The governmental entity need show only reasonable evidence of necessity. City of Jacksonville v. Griffin, 346 So.2d 988, 989 (Fla.1977), citing Ball v. City of Tallahassee, 281 So.2d 333, 337 (Fla.1973). Griffin noted that Ball stands for the proposition that a two-tier model is to be observed when determining whether a condemning authority has met its burden of proving reasonable necessity. The model suggests that: (1) the authority must show reasonable necessity for the condemnation,[1] and (2) after that is shown, such exercise should not be disturbed in the absence of illegality, bad faith or abuse of discretion. See also Inland Waterway Dev. Co. v. City of Jacksonville, 38 So.2d 676 (Fla.1948); Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527 (1929).
Evidence in this case supports the trial court's conclusion that the County sought to condemn only a sufficient property interest which was required to accomplish the project. Evidence also supports the trial judge's conclusion that the project is designed to preserve the shore line, public and private property, and address environment concerns. It clearly is for a public purpose. No evidence was adduced to suggest any bad faith or over-reaching by of the County.
Second, appellants argue that the order granting the County a temporary easement has no duration. The Resolution of Necessity adopted by the County authorized condemnation of fifty-year easements for the project. Testimony at trial established the easements would last for fifty years. We agree the order in this case is defective for failing to limit the easements to a fifty-year period and we remand this cause to the trial court to modify the Order of Taking to reflect that time period.
*523 Third, appellants argue the Order of Taking was not valid because the County's estimate of value was not based on a valid appraisal. The standard of review on this point is whether the trial court had substantial, competent evidence presented to it at trial in order to properly base a decision. In this case we conclude that there was such evidence.
The County's appraiser, Crouse, testified that his verbal appraisal was not based on market data, but rather "market perceptions of things that would impact value." There is no requirement that the appraiser prepare a written report prior to testifying at the hearing, as to a good faith estimate. See Florida East Coast Railway Co. v. Broward County, 421 So.2d 681, 684 (Fla. 4th DCA 1982). In valuing easements which are not readily bought and sold in the market place, appraisers are not limited to a market approach. The USPAP only requires that an appraiser be aware of, understand and correctly employ those recognized methods and techniques necessary to produce a credible appraisal. Standards Rule 1-1.
Crouse's appraisal was based on the concept that the proper valuation of easements taken for public acquisition is the loss in value of the burdened property caused by the easement, not the value of the easement to the taker. He also testified that the easements were of little value to the burdened property because the owners were already unable to develop the easement areas under current regulations and laws. Further, Crouse was of the opinion that the easements were nonexclusive prior to the taking, as they were already being used by the public to such an extent the owners could not interfere with the public use. Thus, his calculations of value were based on the diminishment of potential density of development for the upland property.
Although no Florida case definitively speaks to the issue of valuation of easements, our sister state courts and the federal courts have done so. In a partial taking, the measure of damages to the remainder of property not taken is the difference between the fair market value before acquisition of the easement and the fair market value of the property after acquisition, assuming that the owner is one in fee simple absolute. See Dept. of Transp. v. First Bank of Schaumburg, 260 Ill.App.3d 490, 197 Ill.Dec. 686, 631 N.E.2d 1145 (1st Dist.1992). Stated differently, the measure of damage to part of land upon which an easement is impressed is the depreciation in fair market value caused by its subjection to the condemnor's superior right to use the land. Bank of Schaumburg. This method is the conventional method for valuing easements, i.e., the value of property after the easement is deducted from the market value of the property before the easement. Township of Manchester Dept. of Utilities v. Even Ray Co., Inc., 315 N.J.Super. 122, 716 A.2d 1188 (A.D.1998). See also County Sanitation Dist. v. Watson Land Co., 17 Cal.App.4th 1268, 22 Cal.Rptr.2d 117 (2 Dist.1993).
Similarly, the federal courts have long held that an appropriate measure of valuation in a partial taking is the difference between the value of the parent tract before the taking and after the taking. U.S. v. Virginia Elec. & Power Co., 365 U.S. 624, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961); U.S. v. 8.41 Acres of Land, 680 F.2d 388, 392 (5th Cir.1982). When property taken is an easement, the proper measure of damages is still the before-and-after method, expressed as the difference between the market value of the land free of the easement and the market value of the land burdened with the easement. Virginia Elec.; 8.41 Acres. The value of *524 an easement cannot be ascertained without reference to the dominant estate to which it is attached. U.S. v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787 (1910).
The cost approach and fair market value of the easement approach have been held improper where there was no evidence that the condemned property interest was unique, none of the improvements on the property had been displaced, and the taking involved only an easement. Southern Indiana Gas and Elect. Co. v. Russell, 451 N.E.2d 673 (Ind.App. 1st Dist. 1983). And where an easement is imposed on land which is already burdened with easements, the fee owner is entitled to compensation represented by the difference in value of the land before and after the second easement. City of Gilroy v. Filice, 221 Cal.App.2d 259, 34 Cal.Rptr. 368 (1st Dist.1963). If there is no substantial difference in value, compensation or damage is minimal. Id. See also City of Los Angeles v. Ricards, 10 Cal.3d 385, 110 Cal.Rptr. 489, 515 P.2d 585 n. 4 (1973).
In this case, Crouse valued the remaining uplands in a conventional manner (sales comparisons and income approach) and the value of the easement being equal to the diminishment of value to the uplands being lost caused by loss of density development potential, for all of the properties except that owned by the Cordones. This method of valuing the easements was proper, based on facts adduced at trial. The Cordones' property was discounted considerably more because it could not be accessed or developed. However, the Cordones did not object to Crouse's testimony on valuation at the time it was entered and thus they waived this point for purposes of appeal. See Griffing Bros. v. Winfield, 53 Fla. 589, 43 So. 687 (1907); Home v. Hudson, 772 So.2d 556 (Fla. 1st DCA 2000); Thal v. Roth, 173 So.2d 174 (Fla. 3d DCA 1965)(party who fails to object to introduction of parol evidence during trial waives right to raise objection on appeal).
AFFIRMED; REMANDED to Modify Order to Limit Duration of Easement to Fifty Years.
GRIFFIN and SAWAYA, JJ., concur.
NOTES
[1] Citing Canal Authority v. Miller, 243 So.2d 131 (Fla.1970).