DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MOHAMMAD SIDIQ** and **JOSEFINA SIDIQ,**
Appellants,

v.

**TOWER HILL SELECT INSURANCE COMPANY,** a Florida corporation,
Appellee.

No. 4D18-2177

[July 31, 2019]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Janet C. Croom, Judge; L.T. Case No. 2017-CA-000982.

Timothy H. Crutchfield of Mintz Truppman, P.A., North Miami, for appellants.

Kara Berard Rockenbach and Daniel M. Schwarz of Link & Rockenbach, P.A., West Palm Beach, and Jeffrey M. Thompson of Alvarez, Winthrop, Thompson & Storey, P.A., Orlando, for appellee.

CONNER, J.

The appellants, Mohammad Sidiq and Josefina Sidiq (collectively, "the Insureds"), appeal the final summary judgment entered in favor of the appellee, Tower Hill Select Insurance Co. ("Tower Hill"). The dispute focuses on the scope of language in a contract assigning rights under a property insurance policy. Because we determine the trial court erred in construing the assignment contract, we reverse for further proceedings.

*Background*

The underlying facts of the case are not disputed. Tower Hill issued a property insurance policy to the Insureds. While the policy was in effect, the Insureds alleged that they sustained "extensive water damage . . . throughout" their insured home. Upon discovering the water leak, the Insureds contacted United Water Restoration Group, Inc. ("United") to perform emergency water mitigation services. The Insureds entered into a "Contract for Services, Assignment of Benefits, Direct Payment Authorization, and Hold Harmless Agreement" with United ("the AOB

Contract"). The proper construction of the AOB Contract is at issue on appeal. The relevant paragraph of the AOB Contract is:

<u>ASSIGNMENT OF INSURANCE BENEFITS</u>

> I, hereby, assign any and all insurance rights, benefits, proceeds and any causes of action under *any* applicable insurance policies to [United], for services rendered or to be rendered by [United]. In this regard, I waive my privacy rights. I make this assignment in consideration of [United's] agreement to perform services and supply materials and otherwise perform its obligations under this contract, including not requiring full payment at the time of service. I also herby [sic] direct my insurance carrier(s) to release any and all information requested by [United], its representative, and/or its Attorney for the direct purpose of obtaining actual benefits to be paid by my insurance carrier(s) for services rendered or to be rendered.

The first sentence of the paragraph was the primary language in dispute below.

United submitted an invoice directly to Tower Hill for the water mitigation services it rendered. Subsequently, the Insureds filed a claim with Tower Hill for the entirety of the water damage caused to their home. Tower Hill denied coverage, stating that its investigation revealed that "the leaking ha[d] been occurring over an extended period of time and [was] not a one-time or sudden occurrence but rather from constant and repeated seepage and leakage, nor [was] the damage hidden from view." The Insureds filed a claim for declaratory relief, seeking a judgment determining their rights under the policy. After the action began, United executed a release of all claims against Tower Hill, after Tower Hill paid it a sum of money less than what United initially billed.

Tower Hill filed its answer and affirmative defenses, one of which was the defense of standing. Tower Hill then filed a motion for summary judgment on its affirmative defense of standing, arguing that the Insureds assigned *all* of their rights and benefits to United, and therefore, did not have standing to maintain an action for declaratory relief. In opposition, the Insureds each filed mirroring affidavits, stating that each "did not intend to assign all of [their] rights for this Loss to United" and "intended only to assign [their] right[s] to seek payment for the water mitigation services rendered by United" in executing the AOB Contract.

2

During the hearing on Tower Hill's motion for summary judgment, the parties focused mainly on the first sentence of the assignment paragraph of the AOB Contract. More specifically, the parties focused on the language of the first sentence: "*for services rendered or to be rendered by Company.*" (emphasis added). Tower Hill argued that the clause was a statement of consideration – that the AOB Contract was executed in consideration for *all* of the Insureds' rights under the policy. In opposition, the Insureds argued that the language was *limiting language*, and limited the assignment to only services rendered by United.

The trial court agreed with Tower Hill, and granted summary judgment in its favor, orally finding:

> There is no carve-out for the scope of the assignment within the contractual agreement. What [the Insureds are] asserting is "Consideration," which is a necessary element to making an enforceable contract. "Consideration" here does not affect the "scope" of assignment, nor does the assignment itself carve out anything less than an assignment of all insurance rights, benefits, proceeds and any causes of action under any applicable insurance policies. For a Trial Court to step in and realign the rights, duties and obligations of the parties to the contracting documents including this assignment would be reversible error.

The trial court also entered a written summary judgment in favor of Tower Hill consistent with its oral ruling. The Insureds gave notice of appeal.

*Appellate Analysis*

"We review de novo both an appeal of a summary judgment order and an interpretation of an insurance policy." *Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co.,* 185 So. 3d 638, 640 (Fla. 2d DCA 2016).

On appeal, the Insureds argue that the trial court erred in granting summary judgment in favor of Tower Hill because it misconstrued the AOB Contract. Florida Rule of Civil Procedure 1.510(c) dictates that summary judgment is only proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c).

The parties agree on the basic underlying law. "Under Florida law, an insured may assign his right to benefits under a contract of insurance." *Schuster v. Blue Cross & Blue Shield of Fla., Inc.,* 843 So. 2d 909, 911 (Fla.

4th DCA 2003). "An assignment has been defined as 'a transfer or setting over of property, or of some right or interest therein, from one person to another.'" *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008) (quoting *Black's Law Dictionary* 128 (8th ed. 2004)). "[O]nce transferred, the assignor no longer has a right to enforce the interest because the assignee has obtained all 'rights to the thing assigned.'" *Id.* (quoting *Price v. RLI Ins. Co.*, 914 So. 2d 1010, 1013-14 (Fla. 5th DCA 2005)). Thus, once the interest has been assigned, "the insured has no standing to bring an action against the insurer." *Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic*, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005). There is also no dispute that the Insureds signed the AOB Contract. The question in this case is the scope of that assignment.

Recently, the Second District reviewed a similar issue regarding the scope of an assignment in *Nicon Construction, Inc. v. Homeowners Choice Property & Casualty Insurance Co.*, 249 So. 3d 681 (Fla. 2d DCA 2018). There, a homeowner experienced damage after a pipe burst in his home. *Id.* at 682. In exchange for emergency services, the homeowner provided an assignment of benefits from his insurance policy to two companies, one for water and debris removal ("Company A"); the other for asbestos remediation ("Company B"). *Id.* Later, both companies filed suit against the homeowner's insurance company, claiming that the insurance company failed to pay all benefits due. *Id.* The insurance company then "obtained a summary judgment against [Company B] after persuading the trial court that [Company B's] assignment was invalid because at the time [the homeowner] provided the assignment to [Company B], he had already assigned all the benefits for this loss to [Company A]." *Id.* The district court noted that the trial court's summary judgment focused on language that the homeowner assigned "any and all insurance rights, benefits, and causes of action under my property insurance policy" to Company A. *Id.*

On appeal, the Second District reversed the trial court, determining that:

> [T]he trial court isolated a phrase in the assignment rather than viewing it in the context of the entire agreement. When the phrase "any and all insurance rights, benefits, and causes of action under my property insurance policy" *is read in the context of the entire assignment and the purpose for which it was entered into*, it is evident that [the homeowner] was assigning all his rights under the policy to payment for the services performed by [Company A]—not all his rights to payment for the entire covered claim. Accordingly, the assignment to [Company B] was valid, and it was error for the

4

trial court to enter summary judgment in favor of [the insurance company].

*Id.* at 683 (emphasis added). Although not the exact factual scenario in this case, the premise in *Nicon* that all the language of the assignment must be considered directly applies to the issue of whether an assignment of benefits, containing certain language, assigns all of the benefits for an entire claim, or for specific work performed. The Second District decided the latter in *Nicon*.

When considering the entire assignment paragraph of the AOB Contract, rather than just the contested sentence, it becomes clear that the assignment of benefits was limited. Notably, the contract contains language describing the consideration for the assignment in the second sentence *after* the contested sentence:

> I make this assignment in consideration of [United's] agreement to perform services and supply materials and otherwise perform its obligations under this contract, including not requiring full payment at the time of service.

To the extent all words of a contract should be considered and are generally not deemed superfluous, *see Universal Prop. & Cas. Ins. Co. v. Johnson*, 114 So. 3d 1031, 1036 (Fla. 1st DCA 2013) ("A contract is not to be read so as to make one section superfluous, and so '[a]ll the various provisions of a contract must be so construed . . . as to give effect to each.'" (alterations in original) (quoting *Univ. of Miami v. Frank*, 920 So. 2d 81, 87 (Fla. 3d DCA 2006))), it appears illogical that the assignment would state the consideration twice, particularly given that the "consideration" sentence expressly states that the purpose of that sentence is to describe consideration. Additionally, there is a sentence between the contested sentence and the sentence describing consideration. This indicates that the contested sentence and the sentence describing consideration were intended to address separate and distinct terms of the agreement.

The last sentence of the assignment paragraph states:

> I also herby [sic] direct my insurance carrier(s) to release any and all information requested by [United], its representative, and/or its Attorney *for the direct purpose of obtaining actual benefits to be paid by my insurance carrier(s) for services rendered or to be rendered.*

5

(emphasis added). This again clearly establishes that the scope of the assignment in the AOB Contract is the right to collect payment "for services rendered or to be rendered." Therefore, *Nicon* clearly supports reversal in this case.

Below, Tower Hill's attorney admitted that a plain reading of *Nicon* was "very damaging to at least my argument," but generically argued, and the trial court agreed, that *Nicon* was distinguishable because "the assignments in that case have completely different language than the assignment in this" case. Although, the language in the respective assignments *is* different, the language in this case is more compelling that the scope of the assignment is limited. On appeal, Tower Hill has changed its argument as to *Nicon*, and now argues that this Court should not follow that case, because it was "incorrectly decided." However, even ignoring *Nicon*, simply applying contract construction law leads to the same conclusion.

The trial court found that the first sentence in the assignment paragraph of the AOB Contract was unambiguous. "[I]n analyzing a contract under Florida law, the Court must first look at the words used on the face of the contract to determine whether the contract is ambiguous." *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1214 (M.D. Fla. 2007). "Whether a document is ambiguous depends upon whether it is reasonably susceptible to more than one interpretation." *Detroit Diesel Corp. v. Atl. Mut. Ins. Co.*, 18 So. 3d 618, 620 (Fla. 4th DCA 2009) (quoting *Lambert v. Berkley S. Condo. Ass'n*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996)). "However, a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Id.* (quoting *Lambert*, 680 So. 2d at 590). "In construing the language of a contract, courts are to be mindful that 'the goal is to arrive at a reasonable interpretation of the text of the *entire agreement* to accomplish its stated meaning and purpose.'" *Murley v. Wiedamann*, 25 So. 3d 27, 29 (Fla. 2d DCA 2009) (emphasis added) (quoting *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009)).

The first sentence of the assignment paragraph states: "I, hereby, assign **any** and all insurance rights, benefits, proceeds and **any** causes of action under **any** applicable insurance policies to [United], for services rendered or to be rendered by [United]." (emphases added). It is clear that the Insureds assigned "*any* and all" of their rights and benefits, for "*any*" causes of action, under "*any*" applicable policies. On first impression, the language of the contested sentence is arguably ambiguous as to the scope of the assignment. However, considering the surrounding text and all of the language of the assignment paragraph, we determine that whatever

6

facial ambiguity that may have existed by looking at the contested sentence in isolation is resolved when all of the language of the document is considered as a whole. Thus, we conclude it was the unambiguous intent of the parties to limit the scope of the assignment to the work performed, rather than all of the rights under the insurance contract. The assignment language in this case is clearer than the assignment language in *Nicon.* Therefore, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded for further proceedings.*

WARNER and GERBER, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**