DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN BROWN** and **GEORGENE BROWN,**
Appellants,

v.

**OMEGA INSURANCE COMPANY,**
Appellee.

No. 4D20-563

[May 26, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 50-2018-CA-010137-XXXX-MB.

Earl I. Higgs, Jr. of Higgs Law, P.A., Orlando, for appellants.

Scot Samis of Traub Lieberman Straus & Shrewsberry LLP, St. Petersburg, for appellee.

WARNER, J.

The trial court granted summary judgment in appellants' breach of contract claim against their insurance company, concluding that an assignment of benefits ("AOB") agreement appellants had signed with a contractor divested them of standing to sue appellee insurance company. We reverse, as the AOB contract did not divest the insureds' standing where it applied to work that the contractor performed or would perform, and where the contractor had performed no work under the contract.

Appellants' home was insured through appellee Omega Insurance Company ("insurer"). After suffering water damage to the residence, appellants contracted with Oasis Builders LLC, known as ERG, to perform the repairs on the home. The assignment of benefits terms were as follows:

> The undersigned property Owner [appellants' names handwritten] (hereafter referred to as "Owner" hereby authorize and direct [ERG] (hereafter referred to as "Contractor") to proceed to make repairs at the property . . . and to perform the work set forth in the attached estimate or

approved insurance estimate. *Contractor shall only be obligated to perform work to the extent that the scope of work is approved by the adjustor for the insurance carrier.* The amount to be paid is $ [blank line] (Insurance claim estimate. Plus/minus any change orders requested by home owner)[.] Should the insurance carrier fail to approve the estimate or any part thereof and should work by Contractor have already begun, than ] in such event the Owner shall be fully responsible for all monies due to Contractor for work performed with approved change order. . . .

The insurance carrier is [handwritten "OMEGA"] (herein after referred to as Insurer) and *Owner here by irrevocably assigns to Contractor any and all right, title and/or interest in the insurance proceeds for the work performed or to be performed by Contractor.* Owner further agrees to execute and deliver to Contractor any documents necessary to effectuate this assignment. Owner hereby irrevocably appoints Contractor as Owner's agent and authorizes Contractor to execute any documents on Owners behalf as may be necessary to obtain payment if the assigned proceeds from the Insurer. The Owner hereby assigns to Contractor to the right to pursue collection of insurance proceeds and to receive payment for services directly from the Insurer.

(emphasis added) (errors in original).

Insurer never approved the work, and ERG never performed any repairs on appellants' property. Appellants filed suit against insurer alleging breach of contract. Insurer filed an amended answer in which it raised an affirmative defense that appellants lacked standing to bring the claim, as they had assigned their rights to ERG under the AOB contract.

Insurer moved for summary judgment based upon the AOB contract. In response, appellants filed an affidavit from the owner of ERG in which he testified that the purpose of the AOB contract was to allow ERG to perform repairs on the property in exchange for money. However, ERG never performed any repairs on the property. He averred that ERG "did not intend to receive an assignment of post-loss benefits for unapproved or unperformed re-roofing services and interior repairs."

After a hearing on the motion for summary judgment, the trial court entered judgment in favor of the insured "for the specific facts of this assignment at issue." Appellants then filed their appeal.

Under Florida law, the right to benefits under an insurance contract may be assigned by an insured. *Schuster v. Blue Cross & Blue Shield of Fla., Inc.*, 843 So. 2d 909, 911 (Fla. 4th DCA 2003). "An assignment has been defined as 'a transfer or setting over of property, or of some right or interest therein, from one person to another.'" *Sidiq v. Tower Hill Select Ins. Co.*, 276 So. 3d 822, 825 (Fla. 4th DCA 2019) (quoting *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008)). Once an interest has been assigned, "the assignor no longer has a right to enforce th[at] interest because the assignee has obtained 'all rights to the thing assigned.'" *Id.* (quoting *Cont'l Cas. Co.*, 974 So. 2d at 376).

"[T]he intent of the parties determines the existence of an assignment." *Citizens Prop. Ins. Corp. v. Ifergane*, 114 So. 3d 190, 195 (Fla. 3d DCA 2012) (citation omitted). "Any words or transactions which show an intention on the one side to assign, and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment." *McClure v. Century Ests., Inc.*, 120 So. 4, 9 (Fla. 1928) (citations omitted).

This case is controlled by *Nicon Construction, Inc. v. Homeowners Choice Property & Casualty Insurance Co.*, 249 So. 3d 681 (Fla. 2d DCA 2018) and *Sidiq*. In *Nicon*, an insured property owner who suffered property damage provided an assignment of benefits from the insurance policy to two firms: B & M Clean, LLC, for water and debris removal, and Nicon, for asbestos remediation. 249 So. 3d at 682. Both firms sued the insurer for breach of contract alleging that it failed to pay all the benefits due under the policy. The trial court granted summary judgment in favor of the insurer against Nicon on the basis that Nicon's assignment was invalid. The trial court agreed with insurer that at the time the property owner/insured assigned his rights to Nicon, he had already assigned all the benefits for the loss to B & M Clean. The trial court's decision was based on the language in the B & M Clean assignment that stated that the insured was assigning "any and all insurance rights, benefits, and causes of action under my property insurance policy." *Id.*

The Second District determined that the trial court erred in its interpretation of the assignment. *Id.* at 682–83. The court noted that "[i]n construing a contract, the intent of the parties should be determined from the words of the contract as a whole . . . . The court also should consider the conditions and circumstances surrounding the parties and the objects to be obtained in executing the contract." *Id.* (quoting *City of Tampa v. Ezell*, 902 So. 2d 912, 914 (Fla. 2d DCA 2005)). The court concluded that the trial court erred by isolating "a phrase in the assignment rather than

3

viewing it in the context of the entire agreement." *Id.* at 683. The court found the assignment valid and that the trial court erred, stating:

> When the phrase "any and all insurance rights, benefits, and causes of action under my property insurance policy" is read in the context of the entire assignment and the purpose for which it was entered into, it is evident that [insured] was assigning all his rights under the policy to payment for the services performed by B & M Clean—not all his rights to payment for the entire covered claim.

*Id.* at 683.

We also looked to the agreement as a whole and to its purpose in concluding that the AOB in *Sidiq* did not prevent the insureds from suing their insurer for breach of contract. 276 So. 3d at 826–27. The insureds in *Sidiq* suffered water damage and entered into an AOB with a water mitigation company for emergency services. The water company billed the insurance company directly for its services. Then the insureds sued the insurance company for the repairs made necessary by the water damage. The insurer moved for summary judgment, arguing that the insured had assigned his entire claim to the water mitigation company and could not sue for the repairs. The trial court granted summary judgment, focusing on the AOB's language that it was effective "*for services rendered or to be rendered by Company.*" *Id.* at 824.

On appeal, we relied on *Nicon*, noting that the *Nicon* court looked at the context of the entire assignment and its purpose. *Id.* at 825–26. *Nicon* determined that the assignment was "for specific work performed[,]" and we applied that same reasoning to conclude that the assignment of benefits covered only the work performed. Further, while the trial court had considered only the first sentence of the AOB and concluded that it unambiguously assigned all claims to the contractor, we explained that ambiguity must be determined by analyzing the entire document. "[C]onsidering the surrounding text and all of the language of the assignment paragraph, we determine that whatever facial ambiguity that may have existed by looking at the contested sentence in isolation is resolved when all of the language of the document is considered as a whole." *Id.* at 827. Thus, we held that the AOB did not deprive the insured of standing to bring a claim against the insurer for the remaining repair work. *Id.*

Contracts "should receive a construction that is reasonable, practical, sensible, and just." *Universal Prop. & Cas. Ins. Co. v. Johnson*, 114 So. 3d

4

1031, 1036 (Fla. 1st DCA 2013) (quoting *State Farm Mut. Auto. Ins. Co. v. Fischer*, 16 So. 3d 1028, 1031 (Fla. 2d DCA 2009)).  A contract should be interpreted in a manner consistent with reason and probability.  *BKD Twenty-One Mgmt. Co. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012) (citing *King v. Bray*, 867 So. 2d 1224, 1227 (Fla. 5th DCA 2004)).  "In construing the language of a contract, courts are to be mindful that 'the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose.'"  *Murley v. Wiedamann*, 25 So. 3d 27, 29 (Fla. 2d DCA 2009) (quoting *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009)).

In reviewing the terms of the AOB in question in this case, the clear purpose of the assignment was to enable ERG to be paid directly by the insurer for services performed.  ERG obligated itself to perform work approved by the insurer ("Contractor shall only be obligated to perform work to the extent that the scope of work is approved by the adjustor for the insurance carrier.").  When insurer failed to approve the work, ERG had no further obligation to perform, and did not perform any work.  Following the words of assignment in the "insurance proceeds for the work performed or to be performed by [ERG]," the contract continues with language showing that payment by the insurer for work performed is its purpose: "Owner here by [sic] . . . authorizes [ERG] to execute any documents . . . as may be necessary to obtain payment . . . .  The Owner hereby assigns . . . the right to pursue collection of insurance proceeds and to receive payment for services directly from the Insurer."  This contract clearly contemplates work being performed in order for the assignment to be given.  Consistent with *Nicon* and *Sidiq*, when the entire contract is reviewed together with its purpose, we conclude that this AOB did not deprive the insureds of standing to assert their claim for breach of contract and the right to sue for damages.

For the foregoing reasons, we reverse the final judgment and remand for further proceedings.

DAMOORGIAN and FORST, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

5